# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | |
| EDDIE P. BURROUGHS, | Criminal No. 12-33 (JEB)[1] |
| Defendant. | |

## MEMORANDUM OPINION
(November 29, 2012)

Defendant Eddie P. Burroughs is charged by indictment with one count of unlawful possession with intent to distribute 280 grams or more of cocaine base, one count of unlawful possession with intent to distribute cocaine, and one count of unlawful possession with intent to distribute marijuana. In December 2011, the District of Columbia Metropolitan Police Department executed a search warrant of the Defendant's alleged residence and purportedly recovered the narcotics at issue. Presently before the Court is the Defendant's *Pro Se* Motion to Suppress the search warrant. Upon consideration of the parties' pleadings,[2] and the record, and relevant legal authorities, the Court finds the Defendant's motion lacks merit and is therefore DENIED.

---

[1] This case has been transferred to Judge James E. Boasberg for all purposes except for resolution of this motion.

[2] *See* Def.'s *Pro Se* Motion to Suppress, ECF No. [46-1]; Def.'s Am. Mot., ECF No. [47-1]; Def.'s Second Am. Mot., ECF No. [48]; Gov't's Omnibus Opp'n, ECF No. [51]; Def.'s Reply, ECF No. [54-1]; Def.'s Explanation of Exs., ECF No. [55-1]; Def.'s Suppl., ECF No. [57-1]. The Court also considered the Defendant's *pro se* reply in support of his counsel's [45] Motion to Suppress to the extent it addressed issues raised in the Defendant's *Pro Se* Motion to Suppress. Def.'s Suppl. Reply, ECF No. [53-1]. The parties did not re-submit the relevant search warrant and arrest documents. *See* Aff. of Det. Francis & Search Warrant, ECF No. [20-2]; Signed Search Warrant Return, ECF No. [27-1]; UUV Arrest Report, ECF No. [24-1].

# I. BACKGROUND

The Court detailed the factual and procedural history of this case in its prior Memorandum Opinion, and incorporates that discussion herein. 8/10/12 Mem. Opin., ECF No. [35], at 2-5. In relevant part, on November 26, 2011, at approximately 12:15 AM, two black males purportedly robbed two individuals (the "complainants") at gun point near 6th Street and Trenton Avenue in Southeast Washington, D.C. Def.'s Ex. 1 (Investigative Suppl. Report) at 1. The complainants indicated that, among other things, an iPod, two cellular telephones (one Samsung telephone and one Virgin Mobile telephone), a wallet, and $374 in U.S. currency were taken during the robbery. *Id.*; Aff. of Det. Francis at 1. The complainants described their assailants as two black males: (1) one individual approximately 5'5" with slim build and shoulder length dread locks, wearing a black coat and blue jeans, and carrying a silver handgun; and (2) one individual approximately 6'5", heavy set (200-225 lbs), wearing a black coat with a hood and blue jeans. Def.'s Ex. 1 at 1.

The Defendant was arrested at approximately 1:35 AM on November 26, 2011 in the 3600 block of 6th Street, Southeast, Washington, D.C. UUV Arrest Report at 1. The Defendant was believed to have fled from a vehicle involved in a carjacking in Prince George's County, Maryland, earlier that evening. *Id.* at 2. After being taken to the Seventh District police station, officers recovered a black wallet containing a white access card, various receipts, and $740 in U.S. currency from the Defendant's pants pocket. Def.'s Ex. 1 at 2; Aff. of Det. Francis at 1. Based on the currency, wallet, and white access card recovered from the Defendant, Detective Francis thought the Defendant might have been involved in the armed robbery. Def.'s Ex. 1 at 2. The Defendant was interviewed on November 26 by two Prince George's County Detectives in relation to the carjacking, and by Detective Francis regarding the armed robbery. *Id.*; Aff. of

Det. Francis at 1.

The same day as the Defendant's arrest and interview, Detective Francis attempted to contact one of the complainants to see if the complainant could identify the wallet and white access card recovered from the Defendant, but the identification did not take place until December 2. Def.'s Ex. 1 at 2. In the interim, D.C. Superior Court Judge Kimberley S. Knowles dismissed the UUV charge against the Defendant for lack of probable cause. *District of Columbia v. Burroughs*, 2011 CF2 022837, Probable Cause Hearing (D.C. Superior Ct. Nov. 29, 2011). On December 2, Detective Francis showed several of the items taken from the Defendant upon his arrest to one of the robbery complainants. Aff. of Det. Francis at 2. The complainant identified the wallet and some of the receipts as having been taken during the robbery. *Id.*

On the basis of the complainant's identification, Detective Francis sought a search warrant for the Defendant's residence: 3400 13th Street, Southeast, Apartment 301, Washington, D.C. Detective Francis executed the affidavit in support of the search warrant on December 3, 2011, in front of Superior Court Judge Anthony C. Epstein. *Id.* at 2. Superior Court Judge Ronald P. Wertheim authorized the search warrant on December 5, 2011. The warrant specifically identified the following property to be seized: Sprint Threshold cell phone, Virgin Mobile cell phone, iPod/Shuffle, handgun, ammunition, photographs, proof of ownership of guns, and gun cleaning kits. Officers executed the search warrant on December 6, 2011, and recovered significant quantities of crack cocaine, powder cocaine, and marijuana, which led to the charges currently pending against the Defendant. *See* 8/10/12 Mem. Opin. at 3-4.

## II. LEGAL STANDARD

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "To demonstrate probable cause to

search premises, an affidavit must set forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime." *United States v. Laws*, 808 F.2d 92, 94 (D.C. Cir. 1986). When police obtain evidence by way of an unlawful search, the exclusionary rule may require exclusion of that evidence in some circumstances." *United States v. Glover*, 681 F.3d 411 (D.C. Cir. 2012). However, as the D.C. Circuit explained,

> [T]he exclusionary rule has limited force in cases involving a search with a search warrant. In particular, reviewing courts may not exclude evidence "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984). The reason is evident: "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id*. at 921. The "exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984) (citation omitted).

*Id*. at 418-19. Courts have recognized three exceptions to the good faith principle articulated in *Leon*. Specifically, exclusion may be appropriate regardless of the good faith of the officer executing the warrant if (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned [her] judicial role"; or (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks and citations omitted); *e.g.*, *Glover*, 681 F.3d at 419; *United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008). "An affidavit offered in support of a search warrant enjoys a 'presumption of validity.'" *United States v. Maynard*, 615 F.3d 544, 550 (D.C Cir. 2010). If the Defendant makes a "substantial showing"—that is a "more than conclusory" showing "accompanied by an offer of proof"—that false statements were included or material facts omitted under the first *Leon* exclusion, the Court must hold an evidentiary hearing. *Id.* (citations

4

omitted).

## III. DISCUSSION

The Defendant's pleadings raise a number of issues regarding the procedures surrounding the issuance, content, and execution of the search warrant. Ultimately, none of the Defendant's arguments rise to the level of requiring an evidentiary hearing, much less suppression of the search warrant.

*A.    Signatures on the Search Warrant and Related Documents*

The first general category of arguments raised by the Defendant concerns the execution of the affidavit in support of the search warrant, the search warrant itself, and the search warrant return. The Defendant argues that affidavit, warrant, and return are defective because: (1) Detective Francis forged the signature of the Assistant United States Attorney; (2) the affidavit and warrant were signed on two different days by two different Superior Court Judges; (3) the Judges signed the affidavit and warrant even though the warrant failed to establish probable cause; and (4) Detective Francis must have forged all three signatures himself. None of these arguments have merit.

First, the Defendant alleges that Detective Francis must have forged the signature of the Assistant United States Attorney on the search warrant affidavit. Def.'s Mot. at 4. There is no basis for this argument, and the Defendant cites no authority for the proposition that a defect in the AUSA's signature is grounds for suppressing the search warrant.

Second, the Defendant takes issue with the fact that the affidavit in support of the search warrant and the warrant itself were signed on two separate days by two separate Superior Court Judges. There is nothing inherently suspect with the affidavit and warrant being signed on two different days or by two different Judges. From the face of the warrant, it appears Judge Epstein

signed the affidavit (likely as the emergency Judge) on Saturday, December 3, 2011. Judge Wertheim signed the warrant on the next business day, Monday, December 5, 2011. Any number of issues could have delayed Detective Francis from obtaining the actual warrant on December 3. The Defendant later argues that Judge Epstein denied ever signing the affidavit. To the contrary, Judge Epstein indicated in a letter to Defendant's prior counsel that he did not maintain copies of affidavits or other documents relating to search warrants. Def.'s Ex. 4 (3/30/12 Ltr A. Epstein to N. Lotze) at 5. Judge Epstein never denied signing the affidavit in question. The Defendant also asserts that Judge Wertheim told the Defendant's prior counsel that he did not sign the search warrant, but the Defendant offers nothing to support this allegation. There is nothing in the record to indicate any malfeasance took place, nor is there any reason for the Court to infer any misconduct simply because the warrant was issued on the first business day after the affidavit was witnessed.

The Defendant argues that the D.C. Superior Court Rules for Criminal Procedure provide that the search warrant return must be returned to the issuing Judge on the day after its execution. According to the Defendant, this means that if for some reason the Judge who witnessed the affidavit could not (or did not) sign the warrant on the same day, "the issuing judge or judge chambers would be available for issues related to the authorizing of [sic] just permitting search warrants." Def.'s Am. Mot. at 3. To the contrary, D.C. Superior Court Rule of Criminal Procedure 41(f) instructs that "[a] copy of the warrant shall *be filed with the Court* on the next court day after its execution." This Rule has no bearing on the availability of Judges when *issuing* search warrants. The Defendant fails to cite any portion of Superior Court Rules for Criminal Procedure or any other applicable rules that would establish the issuance of the search warrant in this case was procedurally improper.

Third, the Defendant contends that Judge Epstein and Judge Wertheim erred in signing the affidavit and warrant respectively even though, in the Defendant's view, the affidavit did not set forth facts sufficient to show probable cause. As to Judge Epstein, this argument misunderstands the role of the Judge in witnessing the officer's affidavit in support of a search warrant. Judge Epstein, in signing the affidavit, was not making a finding of probable cause. Rather, Judge Epstein simply witnessed the affidavit in the same way a notary public would witness an affidavit: Judge Epstein simply certified that the affiant signed the affidavit in the Judge's presence. It is only Judge Wertheim in issuing the warrant that was charged with making any determination as to probable cause.

As to Judge Wertheim, the Defendant alleges that Judge Wertheim must have signed the warrant without viewing the affidavit "because he would have saw [sic] the affidavit did not authorize a seizure or search for [certain evidence]." Def.'s Mot. at 4. There is nothing in the record to indicate Judge Wertheim signed the warrant without first reviewing the supporting affidavit. This argument is nothing more than a repeat of the Defendant's arguments elsewhere attacking the sufficiency of the affidavit. As outlined *infra*, the affidavit provided a sufficient basis from which Judge Wertheim could find probable cause.

Fourth, the Defendant alleges that "the search warrant and affidavit are false documents and [Detective] Francis signed the return himself." Def.'s Am. Mot. at 3. In support of this accusation, the Defendant argues that none of the Defendant's attorneys were able to identify the signature of the Judge on the search warrant return. The fact that the signature on the return is illegible is not itself sufficient to support the Defendant's conclusion that Detective Francis must have forged all three documents. An illegible signature on the search warrant *return* is not a basis for suppressing the search warrant.

A number of the Defendant's arguments can be characterized as concerning the contents of Detective Francis' affidavit, filed in support of the search warrant, specifically that certain material information was omitted from the affidavit, the affidavit contained a false statement, and that the information in the affidavit was stale.  The Court shall address each issue in turn.

1.     Omissions from the Affidavit

The Defendant alleges that the affidavit omitted a range of information, which now requires the Court to hold a *Franks* hearing.  In order to obtain a *Franks* hearing, the Defendant must show (1) the Detective omitted information from the affidavit; (2) if included, the omitted information would have defeated probable cause; and (3) that Detective Francis knowingly and intentionally (or with reckless disregard) omitted the information.  *United States v. Glover*, 681 F.3d 411, 419 (D.C. Cir. 2012); *United States v. Becton*, 601 F.3d 588, 594 (D.C. Cir. 2010).  At this stage, the Defendant must make a "substantial showing" that he could satisfy this standard through an "offer of proof."  *See Maynard*, 615 F.3d at 550.  None of the "omissions" identified by the Defendant, alone or in combination, amount to the substantial showing necessary to trigger an evidentiary hearing.

The Defendant identifies four different purported omissions: (1) the description of the robbery suspects; (2) the Defendant's statement that he was not involved in the robbery; (3) the fact that the Superior Court found no probable cause for the Defendant's arrest on the UUV charge; and (4) the location of the robbery.[3]  Initially, the description of the robbery suspects was

---

[3]    The Court previously rejected the Defendant's argument that the affidavit failed to establish a nexus between the armed robbery and his residence.  8/10/12 Mem. Opin. at 12-14. The Defendant's latest motion provides no new factual or legal analysis, therefore the Court declines to revisit the issue.

of marginal relevance at the point one of the complainants identified items taken from the Defendant. Assuming the issuing Judge would agree with the Defendant that he did not match the description of either assailant provided by the robbery complainants, this fact would not have defeated probable cause. Even if told the description of the suspects, a reasonably prudent person could conclude from the identification of the items taken from the Defendant, in combination with the other information in the affidavit, that a search of the residence would yield evidence of the robbery. Moreover, there is nothing to indicate Detective Francis intentionally or recklessly omitted the description of the suspects. The record indicates that the robbery complainants were not confident they could identify one of the assailants, Def.'s Ex. 1 at 1, which calls into question the viability of the description. The description of the robbery suspects would not have defeated probable cause, and there is nothing to indicate the omission of this information was intentional or reckless, thus no *Franks* hearing is warranted.

Next, the Defendant contends that Detective Francis erred in omitting the fact that the Defendant denied being involved in the robbery when questioned on November 26, 2011. The idea that Judge Wertheim would have or should have credited the Defendant's denial in the face of the complainant's identification is implausible. The Defendant's denial would not have defeated probable cause, and Detective Francis reasonably omitted the Defendant's statement from the affidavit.[4]

Additionally, the Defendant asserts that Detective Francis should have disclosed that Judge Knowles dismissed the UUV charge against the Defendant for want of probable cause.

---

[4] Moreover, the affidavit implicitly reflected the Defendant's denial of any involvement in the robbery insofar as the affidavit indicates the Defendant was interviewed after his arrest, but did not indicate that the Defendant made any inculpatory statements during the interview. Aff. of Det. Francis at 1.

Since the Defendant was not initially arrested in connection with the robbery, it was logical for the Detective to explain why the Defendant was in custody. The affidavit does not draw any conclusions from the fact that the Defendant was arrested on a separate charge to support the finding of probable cause. Likewise, disclosing the fact that the UUV charges had been dismissed would not defeat probable cause derived from the identification by the robbery complainant and the nature of the robbery.[5] Furthermore, the Defendant proffers no evidence to show Detective Francis intentionally or recklessly omitted this information from the affidavit.

The Defendant also argues that the location of the robbery was a material omission. The Defendant argues that it would have been illogical for the Defendant to commit the armed robbery at 12:15 AM, return to his apartment to drop off the proceeds of the robbery, then return to the general area of the robbery at approximately 1:30 AM, the time of his arrest in connection with the UUV. To the contrary, any "logical" behavior the issuing Judge might otherwise ascribe to the Defendant was negated by the identification by the robbery complainant. If anything, the fact that the Defendant was arrested an hour after the robbery in the general area of the crime with items taken during the robbery *in his pockets* would have further strengthened the probable cause otherwise set forth in the affidavit. The Defendant later shifts this argument to claim that he would not have had time to return to his apartment between the robbery and his arrest. Def.'s Explanation of Exs. at 8. One hour is more than sufficient time for the Defendant to travel the approximately ten blocks from the location of the robbery to his apartment, then return. In light of the identification, even absent disclosure of the location of the robbery, any

_____

[5] If anything, noting that the Defendant was found not to be connected to the UUV, but was found in the general area of the robbery approximately one hour later would strengthen the finding of probable cause.

reasonably prudent person would believe the Defendant kept the proceeds of the robbery at his apartment despite the risk of detection.

Finally, the Defendant faults Detective Francis for failing to indicate the strength of the identification made by the complainant. It is the Defendant's burden to make an offer of proof that the statement in the affidavit—that the robbery complainant identified the wallet and receipts as having been taken from the complainant during the robbery—was false, and that Detective Francis included the statement with the requisite *scienter*. *See Glover*, 681 F.3d at 419. Simply questioning the statement in the affidavit is insufficient. Since the Defendant failed to make the necessary threshold showing, no *Franks* hearing is required.

2.    <u>False Statement in the Affidavit</u>

As with purported omissions from a search warrant affidavit, in order to obtain a *Franks* hearing on the grounds Detective Francis included a false statement in the affidavit, the Defendant "must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth." *Becton*, 601 F.3d at 594 (citations omitted). The Defendant contends Detective Francis falsely stated that he has served as a police officer for over forty years. The Defendant claims this statement was false because he "have [sic] several witnesses who have come into encounters with the affiant on several occasions," and "that the Detectives [sic] looks to be in his mid 40's max." Def.'s Am. Mot. at 1. Second-hand speculation as to the Detective's age falls far short of the "offer of proof" necessary to trigger a *Franks* hearing. Additionally, the precise length of Detective Francis' service was not material to the finding of probable cause since it indicated he has substantial investigative experience. Therefore, no evidentiary hearing is necessary.

11

3.    <u>Staleness</u>

The Defendant next renews his argument that the information in the search warrant affidavit was stale, for three reasons: (1) an assailant would not keep a stolen cellular phone because the subscriber could call and deactivate the phone; (2) the assailant could sell the receipts of the robbery, making them perishable; and (3) the Defendant, if involved in the robbery, likely would have disposed of any proceeds after Detective Francis interviewed him regarding the robbery.  The record does not support the Defendant's first claim.  There is nothing to indicate the phones taken from the complainants could have been or were deactivated by the subscribers; there is no reason to believe (now or at the time the search warrant was issued), that the assailant could not have used the cellular phones taken during the robbery in connection with a separate account, including by simply replacing the SIM card.

Second, the fact that an item *could* be sold does not make it perishable.  In analyzing staleness, the D.C. Circuit noted that

> The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc.

*United States v. Bruner*, 657 F.2d 1278, 1298 (D.C. Cir. 1981) (citation omitted).  Many of these factors weighed in favor of concluding there was probable cause to believe evidence of the robbery would be recovered from the Defendant's residence: the Defendant was a resident of the area with a confirmed address and the items taken---namely, the cellular phones---would provide enduring utility to the user.  The fact that an item can be sold does not defeat probable cause; just about anything taken during the course of a robbery could be sold.  The usefulness a cellphone

would provide to the assailant, however, makes it more likely the assailant would keep the item after the robbery, and therefore supported the finding of probable cause.

The Defendant's third staleness point would require courts to presume that perpetrators always (or usually) take logical steps to avoid detection. The Defendant cites no authority for the proposition that courts must assume an individual believed to be involved in illegal activity is necessarily a rational actor. Moreover, Judge Wertheim reasonably relied in part on Detective Francis' experience that—despite the risk of detection—perpetrators often keep things like cellular phones and iPods for personal use. Aff. of Det. Francis at 2. In any event, as the Court previously explained, even if the information was legally stale, the officers involved in the search reasonably believed the affidavit established probable cause, therefore suppression on this basis is inappropriate. *United States v. Webb*, 255 F.3d 890, 904-05 (D.C. Cir. 2001).

### 4. The Identification by the Robbery Complainant

The Defendant takes issue with the "identification" by the robbery complainant of certain items taken from the Defendant upon his arrest for the UUV charge. In essence, the Defendant argues that Detective Francis fabricated the identification, alleging that: (1) the complainant did not sign a form reflecting the identification; (2) Detective Francis altered the evidence by writing on it; and (3) Detective Francis waited several days to show the complainant the items.

With respect to the first and second issues, the Defendant failed to cite any rule, regulation, or statute setting forth the procedures for handling identifications by MPD officers, nor does he cite any authority that a violation of such procedures would be grounds for suppressing the identification.[6] Moreover, it is not the Government's burden to show that the

---

[6] It would appear the Defendant meant to cite Superior Court Rule of Criminal Procedure 41(c) in support of his argument that the robbery complainant was required to complete some

underlying identification took place.  The Defendant must first make a "substantial showing" that the statement by Detective Francis regarding the identification was false before the Government has any obligation to produce evidence on this issue.

In terms of the Defendant's third argument, the Defendant contends that the identification and warrant are suspect because the identification did not take place and the warrant was not sought until after a purported altercation between the Defendant and Detective Francis.  There is no evidence in the record to indicate any altercation actually took place.  Moreover, the record demonstrates that Detective Francis attempted to arrange the identification on November 26— one week before the alleged altercation—but was unable to reach the complainant.  Def.'s Am. Mot. at 2.  Additionally, the record indicates the identification was made on December 2, 2011, the day *before* the alleged altercation.  Aff. of Det. Francis at 2.  The Defendant's unsubstantiated claims in his pleadings are not a basis for questioning the identification.

Later in his pleadings, the Defendant contends that neither of the robbery complainants claimed that a white access card was taken from them during the robbery.  *E.g.*, Def.'s Am. Mot. at 1.  The Defendant emphasizes this point because both the report filed by Detective Francis on November 26 and the affidavit indicate that the Defendant was questioned regarding the robbery because a white access card was found in a black wallet located on the Defendant at the time of his arrest.  *Id.*  There are several issues with this argument.  First, there is no indication that the "supplemental" investigative report attached to the Defendant's motion was intended to represent a comprehensive list of items taken during the robbery.  Def.'s Ex. 1 at 1.  Second, Detective

---

form confirming the identification.  Rule 41(c), in relevant part, simply states that the party applying for a search warrant "may also submit depositions or affidavits of other persons containing allegations of fact" in support of the search warrant application.  This rule did not require Detective Francis to submit a sworn affidavit from the complainant as part of the search warrant application.

Francis mentioned the white access card in a supplemental report completed on November 26, the same day as the robbery. *Id.* at 2. Detective Francis did not suddenly invent a missing white access card on December 3 when executing his affidavit. The record does not support the Defendant's assertion that Detective Francis fabricated the missing white access card. This claim is meritless.

C.     *Description of the Items to be Seized in the Warrant*

In terms of the search warrant itself, the Defendant argues that it failed to adequately describe the items to be seized. Among other things, the Defendant argues the warrant should have specified the color, size, and type (flip phone, touch screen, etc.) of Sprint and Virgin Mobile cellular telephones. Def.'s Mot. at 2. Similarly, the Defendant contends the warrant should have indicated the model and caliber of the gun the officers sought to seize, the specific photographs sought, and the color of the iPod Shuffle. *Id.*

"The requirements for a warrant vary based on the purpose for which it is sought and the purpose of the search determines the requisite level of particularity." *Elkins v. District of Columbia*, 690 F.3d 554, 563 (D.C. Cir. 2012). Search warrants seeking to seize evidence from the premises to be searched must describe the items to be seized. *See id.*; *cf. id.* (finding a warrant need not specify any items to be seized if the purpose of the warrant is only to inspect the premises). "In assessing particularity, courts are concerned with realities of administration of criminal justice. It is sufficient if the warrant signed by the judicial officer is particular enough if read with reasonable effort by the officer executing the warrant." *United States v. Dale*, 991 F.2d 819, 846 (D.C. Cir. 1993) (citations omitted).

Based on the circumstances of this case, the search warrant described the items to be seized with sufficient particularity. The warrant identified the manufacturer and model of one

cellular phone, and the carrier of the second phone, which would enable the executing officers to reasonably understand what items were to be seized. The warrant also identified the specific model of iPod at issue. Moreover, there is no evidence to suggest the warrant could have described the weapon and ammunition with greater particularity. It is not as if the warrant authorized the officers to seize all evidence relating to a robbery, or employed other broad or vague terms. *Cf. Dale*, 991 F.2d at 846 (finding the phrase "business records including, but not limited to" to be insufficiently particular). The Defendant does not cite any authority for the proposition that the search warrant must contain the level of detail he would prefer; the search warrant in this case was sufficiently particular given the circumstances.

Relatedly, the Defendant contends that the warrant was defective because it listed several items not included in the affidavit, namely, the gun, ammunition, gun cleaning kit, and photographs. The affidavit offered in support of a search warrant need not list every item to be seized; it is the list of items in the *warrant* that is relevant for Fourth Amendment purposes. *Cf. Maxwell*, 920 F.2d at 1031-32 (noting that the warrant must specifically incorporate the affidavit by reference in order to rely on the description of items to be seized as set forth in the affidavit).

### D.      *Execution of the Search Warrant*

In addition to the plethora of purported defects with the search warrant and affidavit, the Defendant takes issue with the manner in which MPD Officers executed the search of the residence. The Defendant first argues that the Officers exceeded the scope of the warrant by seizing items that were not listed on the warrant, some of which the Defendant could legally possess. According to the "plain view doctrine," "when the police have a valid warrant to search a given area for specific objects, and in the course of the search come across some other article of incriminating character, they may seize if it is immediately apparent to the police that they

have evidence before them." *United States v. Pindell*, 336 F.3d 1049, 1054 (D.C. Cir. 2003) (citations omitted); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 465-66 (1971) (setting forth the "plain view doctrine"). As explained *supra*, the warrant issued to search the premises in question was valid, thus the officers were permitted to seize any items in plain view that the officers had probable cause to believe constituted inculpatory evidence, regardless of whether those items were listed in the warrant. Moreover, these additional items need not be contraband in order to be seized. *See Pindell*, 336 F.3d at 1054-55 (upholding the seizure of notebooks not listed in the search warrant pursuant to the plain view doctrine). The Defendant fails to identify any items seized that would not qualify for seizure pursuant to this doctrine, therefore this argument lacks merit.[7]

Second, the Defendant contends that the contraband that was seized from the residence in question was not found in plain view. While executing a search warrant, officers are permitted to search locations in which items named in the search warrant may reasonably be found. *See*, *e.g.*, *United States v. Garces*, 133 F.3d 70, 74 n.1 (D.C. Cir. 1998). In combination with the plain view doctrine, this means that the officers searching a residence may seize incriminating evidence (even if it was not listed on the search warrant) if recovered from any location in which the items named in the search warrant may have been found. The Defendant does not identify where the contraband was seized from in his apartment, much less demonstrate that it was seized in violation of these principles. Accordingly, this argument is not a basis for suppressing the fruits of the search.

---

[7] Nor does the Defendant cite any authority for the proposition that seizure of certain non-incriminating items would require suppressing *all* evidence recovered during the search, including the narcotics at issue in this case.

Third, the Defendant argues that the search was actually a pretext for recovering evidence related to the carjacking that preceded his UUV arrest. The Defendant's argument is convoluted, but implies that because officers seized multiple cell phones from his apartment, they must have been searching for evidence relating to the carjacking. Def.'s Mot. at 5. However, at the point officers recovered substantial quantities of narcotics from the residence, the officers had probable cause to believe that the seven cellular telephones located in the residence—which the Defendant indicated he occupied alone—were evidence of drug trafficking. Once the narcotics were discovered in the Defendant's apartment while searching for the stolen items and weapon, the officers were permitted to seize evidence not listed in the initial search warrant. In other words, the evidence taken from the Defendant's residence differed from the items specified in the warrant because of what officers discovered upon executing the search warrant; there is no reason to believe the search was a pretext for investigating the carjacking.

E.    *Search Warrant Return*

The Defendant also contends that he was prejudiced by Detective Francis' failure to timely file the search warrant return. As the Court previously explained, it is highly doubtful that a violation of the time frame for filing the search warrant return, set forth in Rule 41(f), is grounds for suppressing the fruits of a search warrant. 8/10/12 Mem. Opin. at 21. The Defendant ignores this ruling, and simply asserts that he was prejudiced by the late filing of the return because "instead of promptly returning the warrant back to the issuing judge with the alleged items found listen in the return," Detective Francis "entirely avoids returning the search warrants and calls another officer in from another district to go and apply for a [sic] arrest warrant [in Federal Court]." Def.'s Am. Mot. at 4. Nowhere within this argument does the Defendant explain how he was prejudiced. At the end of the search, the officers left a copy of

the warrant and return containing a list of all items seized, including the contraband, at the Defendant's residence. 8/10/12 Mem. Opin. at 23. The Officers later weighed the contraband and including the precise amounts on the version of the return filed with the Superior Court. *Id.* at 17; Signed Search Warrant Return, ECF No. [27-1]. The Defendant was not prejudiced by this, or by the fact the Government elected to pursue charges against the Defendant in this Court, rather than Superior Court.

The Defendant further takes issue with the fact that the original warrant was not returned to the court after the conclusion of the search. Per Superior Court rules, officers must leave a copy of the search warrant and return at the premises, and file a copy of both documents with the Superior Court. D.C. Sup. Ct. Rule of Cr. P. 41(e)(4). Logically, the officers must make copies of the original warrant in order to be able to leave a copy at the premises searched. *See* 8/10/12 Mem. Opin. at 19-20. There is nothing inherently suspect in filing a photocopy of the warrant with the court after execution.

### F.     *Miscellaneous Arguments*

The Defendant makes a number of miscellaneous arguments, none of which have merit. First, the Defendant contends the prosecutor lied about not having a video of the Defendant's statement to Detective Francis. Def.'s Ex. 2 (3/20/12 Ltr. M. Acevedo to N. Lotze) at 8. The Government indicated during various status hearings in this matter that it initially thought the Defendant's statement had been videotaped, but later determined that not such tape existed. The letter cited by the Defendant simply reflects the Government's initial belief that a videotape existed. Moreover, at most this argument, if true, would seem to support suppressing the use of the Defendant's statement at trial. However, the Government previously indicated it did not

intend to introduce the substance of the Defendant's statement, therefore this argument is irrelevant.

Second, the Defendant claims that another individual, Troy Knight, was later identified in connection with the robbery by one of the robbery complainants, yet neither Mr. Knight nor the Defendant was ever arrested for the robbery. Def.'s Second Am. Mot. at 10-11. The Defendant claims that the lack of charges related to the robbery is evidence that (1) the robbery complainants never identified the items seized from the Defendant; and/or (2) that Detective Francis "is strongly involved in misconduct." *Id.* at 11. Once again, the Defendant launches allegations of misconduct against Detective Francis without any basis in fact. Any number of issues could lead the Government to decline to file charges even with a positive identification and recovery of certain robbery proceeds, none of which would implicate Detective Francis in any misconduct.

Third, the Defendant alleges that the receipt for the property that was purportedly returned to the Defendant after his release on the UUV charge was a forgery. The Defendant explains that the Seventh District faxed his former defense counsel a paper indicating the Defendant signed for the property the Government alleges was returned to the Defendant, but he "suspect [sic] that hose papers could have been very well altered." Def.'s Second Am. Mot. at 12. There is no basis for the Court to pursue a baseless theory that Defendant admits is simply speculation.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds the Defendant has not provided any basis on which to suppress the evidence seized from 3400 13th Street, Southeast, Apartment 301, Washington, D.C. The Defendant's multiple pleadings failed to identify any procedural issues

with the issuance or execution of the search warrant and related documents that could lead to the suppression of the warrant. The warrant was facially sufficient, and did not include any material omission or false statements. The officers executing the warrant did not exceed the scope of the warrant or seize any unauthorized property. The Defendant's miscellaneous arguments regarding the investigation likewise have no merit. Accordingly, the Defendant's *Pro Se* Motion to Suppress is DENIED. An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE